# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

SOURCE ASSOCIATES, INC., et al.,   )    CASE NO. 5:15-cv-215
                                  )

                  PLAINTIFFS,   )    JUDGE SARA LIOI
                                  )

vs.                            )

                                  )    MEMORANDUM OPINION

MITSUI CHEMICALS AMERICA, et   )
al.,                                )

                     DEFENDANTS.   )

This matter is before the Court on two motions for summary judgment.[1] The first is the motion of defendants Mitsui Chemicals America, Inc. ("MCA") and Gregory Bushman (in his capacity as an employee of MCA) ("Bushman") (collectively, the "MCA defendants") for judgment on the claims asserted against them by plaintiffs Source Associates, Inc. ("Source") and Conrad A. Mamajek, Inc. ("CAM") (collectively "plaintiffs" or "Source/CAM") (Doc. No. 92 ["MCA SJ Mot."]). Plaintiffs opposed the motion (Doc. No. 99 ["Opp'n MCA SJ Mot."]), and the MCA defendants filed a reply (Doc. No. 103 ["MCA SJ Reply"]). The second is the amended motion of defendants Bushman (in his individual capacity) and Lewis Breon ("Breon") (collectively the "Bushman/Breon defendants") (Doc. No. 94 ["B&B SJ Mot."]). Plaintiffs opposed the

---

[1] Also before the Court are the objections of MCA to certain exhibits submitted by plaintiffs in support of their opposition to MCA's summary judgment motion. (Doc. No. 104), which the Bushman/Breon defendants joined (Doc. No. 105). Plaintiffs filed a single opposition. (Doc. No. 107.) In ruling on the defendants' summary judgment motions, the Court did not rely upon the exhibits to which defendants object. Accordingly, defendants' objections are overruled as moot.

motion (Doc. No. 100 ["Opp'n B&B SJ Mot."]), in response to which the Bushman/Breon defendants filed an amended reply. (Doc. No. 106 ["B&B SJ Reply"]).

For the reasons that follow, defendants' motions for summary judgment are granted.

## I. BACKGROUND

### A. Factual

After this case was removed from the Summit County Court of Common Pleas on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332, plaintiffs were granted leave to file an amended complaint. The first amended complaint (Doc. No. 23 ["FAC"]), brought against defendants MCA, Bushman,[2] Breon, and NXT Phase, LLC ("NXT"),[3] sets forth six claims for relief: against MCA for breach of contract (claim one) and for breach of the covenant of good faith and fair dealing (claim two); against Bushman, Breon and NXT for tortious interference with the contractual and business relationship between MCA and Source/CAM (claim three); against all defendants for tortious interference with contractual and business relationships between Source/CAM and non-parties Complex Chemicals Co., Inc. ("Complex") and John Brindle Oil and Chem LTD ("Brindle") (claim four); and against all defendants for unjust enrichment (claim five) and civil conspiracy (claim six).

---

[2] Plaintiffs claim that "Bushman, both as an employee of Mitsui and individually, engaged in a course of conduct . . . causing harm to Source and CAM." (FAC ¶ 4.)

[3] NXT was later dismissed from this action for failure to prosecute. (Doc. No. 49.)

The undisputed facts generally underlying all six claims can be briefly summarized as follows.[4] In the spring of 1999, Source and CAM entered into a joint venture for the purpose of selling off-spec viscosity modifier polymer ("VME") produced by Mitsui Chemicals, Inc. ("MCI") and Mitsui Elastomers Singapore Pte Ltd ("MELS"). The off-spec VME produced by MCI and MELS was sold to plaintiffs through MCA. Plaintiffs had two customers for this product—Brindle and Complex.

From 1999 through December 2013, Source purchased off-spec VME from MCA at prices CAM negotiated with MCA for re-sale to Brindle and Complex. MCA drop-shipped the product to Brindle and Complex. Net profits of the joint venture were divided equally between Source and CAM.

Bushman was an employee of MCA until his retirement on December 31, 2013. He held the position of Director of Business Development, and the sale of prime and off-spec VME was his responsibility. Bushman discussed his retirement plans with his supervisor in the first half of 2013, and recommended that in 2014, MCA utilize his company, NXT, to sell off-spec VME. MCA terminated off-spec VME sales to plaintiffs, effective December 31, 2013, and directed the sale of off-spec VME to NXT, instead.[5] These events triggered this lawsuit.

---

[4] Additional facts are discussed later in this opinion as necessary to the Court's analysis of defendants' motions.

[5] Plaintiffs claim that Bushman utilized Source/CAM's alleged secret and proprietary customer information, buying history and pricing policies available to him from plaintiffs' off-spec VME purchases from MCA to deprive them of their off-spec VME business. Defendants dispute whether plaintiffs' customer and pricing information is confidential and proprietary. While it appears that the defendants have the better argument, the Court need not resolve this issue in order to rule on defendants' summary judgment motions.

**B. Procedural**

Bushman (in his individual capacity) and Breon moved to dismiss the claims asserted against them in the first amended complaint for failure to state a claim. The motion was granted in part and denied in part. *Source Assocs., Inc. v. Mitsui Chemicals Am., Inc.*, No. 5:15-CV-215, 2016 WL 828785 (N.D. Ohio Mar. 3, 2016).

With respect to claim three, the motion was granted as to Breon but denied as to Bushman. As to claim four brought against all defendants, the Court ruled that claim failed to state a claim against Bushman and Breon, and claim four was dismissed as to those defendants. *Id*. Bushman and Breon's motion to dismiss claims five and six were denied. *Id*. at *5-6. Finally, the Court declined to resolve the issue of whether plaintiffs' claims are preempted by Ohio's Uniform Trade Secret Act ("OUTSA"), leaving that issue for summary judgment. *Id. at* *6-7.

MCA now moves for summary judgment on all claims asserted against the MCA defendants: breach of contract (claim one); breach of the covenant of good faith and fair dealing (claim two); tortious interference with contractual and business relationships between plaintiffs and their customers, Brindle and Complex (claim four); unjust enrichment (claim five); and civil conspiracy (claim six).

Bushman and Breon seek summary judgment on all claims that survived their motion to dismiss. Bushman seeks summary judgment on claim three (tortious interference with the relationship between plaintiffs and MCA), and Bushman and Breon seek summary judgment on claims five and six.[6]

## II. LEGAL STANDARD

### A. Summary Judgment

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[7] A fact is material if its resolution affects the outcome of the lawsuit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute is genuine, and summary judgment is not appropriate, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party must provide evidence to the court that demonstrates the absence of a genuine dispute as to any material fact. Whether a disputed fact is material is entirely dependent upon the essential elements of each particular claim for which a party seeks summary judgment. *See In re Meridia Prod. Liab. Litig.*, 328 F. Supp. 2d 791, 796

---

[6] As part of their motion, Bushman and Breon argue that the only evidence plaintiffs should be permitted to advance in opposition to the motion are plaintiffs' answers to interrogatories because those answers were never supplemented after depositions. (B&B SJ Mot. at 2640-41 (all references to page numbers are to the page identification numbers generated by the Court's electronic filing system.).) Plaintiffs oppose defendants' argument that the evidence considered by the Court on summary judgment should be so limited. (Opp'n B&B SJ Mot. at 3009-10.) Although the plaintiffs had a duty to supplement pursuant to Fed. R. Civ. P. 26(e)(1), the Court will not limit the evidence as requested by defendants, because consideration of the evidence does not change the outcome.

[7] Because this matter is before the court pursuant to diversity jurisdiction, the Court applies federal procedural law with respect to defendants' motion for summary judgment, and state substantive law to plaintiffs' six state law claims. *See Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938).

(N.D. Ohio 2004) ("In seeking summary judgment, the moving party bears the initial burden of showing an absence of a genuine issue of material fact as to an essential element of the nonmoving party's case.") (citing *Waters v. City of Morristown,* 242 F.3d 353, 358 (6th Cir. 2001)). Once the moving party meets this initial burden, the opposing party must come forward with specific evidence showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Anderson*, 477 U.S. at 250. The nonmoving party may oppose a summary judgment motion "by any of the kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves[.]" *Celotex*, 477 U.S. at 324. The Court must view all facts and evidence, and inferences that may be reasonably drawn therefrom, in favor of the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S. Ct. 993, 8 L. Ed. 2d 176 (1962).

General averments or conclusory allegations of an affidavit do not create specific fact disputes for summary judgment purposes. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). "'The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party].'" *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989) (*quoting Anderson*, 477 U.S. at 252).

The district court's review on summary judgment is a threshold inquiry to determine whether there is the need for a trial due to a genuine factual dispute that must be resolved by a finder of fact because those issues may reasonably be resolved in favor of either party. *Anderson*, 477 U.S. at 250. Put another way, this Court must determine

"whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 578 (6th Cir. 2003).

> Summary judgment is required:
>
> against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party bears the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is entitled to judgment as a matter of law because the nonmoving party has failed to make a sufficient showing of an essential element of [his] case with respect to which [he] has the burden of proof.

*Celotex,* 477 U.S. at 322-23 (internal quotation marks and citation omitted).

**B. Choice of Law**

Neither party has advanced any evidence or argument regarding the issue of choice of law applicable to plaintiffs' claims. "Absent an effective choice of law provision, Ohio courts apply the law of the state with the most significant relationship to the contract." *Bruster v. Uber Tech., Inc.*, 188 F. Supp. 3d 658, 663 (N.D. Ohio 2016) (quoting *Andrews v. Columbia Gas Transmission Corp.*, 544 F.3d 618, 623 (6th Cir. 2008) (further citation omitted)). "To assist in making this determination, Section 188(2)(a) through (d) [of the Restatement of Conflicts] more specifically provides that courts should consider the place of contracting, the place of negotiation, the place of performance, the location of the subject matter, and the domicile, residence, nationality, place of incorporation, and place of business of the parties." *Ohayon v. Safeco Ins. Co. of Illinois*, 747 N.E.2d 206, 209 (Ohio 2001).

Both plaintiff corporations are citizens of Ohio, and their principal places of business are in Ohio. (FAC ¶¶ 1, 2.) The oral agreement that plaintiffs allege controls this case was negotiated in Japan, as discussed below. MCA, which performed administrative functions related to the alleged agreement, is incorporated in the State of Delaware, with its principal place of business in New York. (Doc. No. 1 ¶ 8). Bushman is a citizen of New York, and Breon now resides in California. (*Id.* ¶¶ 9, 10.) During all time periods relevant to this case, however, Breon was an employee of Lubrizol, an Ohio corporation. (*See* MCA SJ Mot. at 2426.)

Neither side has briefed the choice of law issue, but both sides apply Ohio law to their analysis. Upon balancing the above factors, the Court finds that Ohio has the most significant relationship to this dispute and, therefore, will apply Ohio law.

### III. ANALYSIS

#### A. Claim one—Breach of contract against MCA

"Under Ohio law, the elements of a breach of contract claim are: (1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage or loss to the plaintiff as a result of the breach." *V & M Star Steel v. Centimark Corp.,* 678 F.3d 459, 465 (6th Cir. 2012) (citing, among authorities, *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 762 (6th Cir. 2008)).

Plaintiffs claim that there is an enforceable contract between MCA and plaintiffs, requiring MCA to sell off-spec VME to them exclusively and until such time as plaintiffs no longer desire to purchase that product. According to plaintiffs, the alleged contract was formed when Mamajek traveled to Japan as a Lubrizol employee, just before he retired in 1998, in order to meet with MCI executive, Katsuhiko Tasaka ("Tasaka").

During that meeting, plaintiffs claim that Tasaka told Mamajek that MCI had a warehouse full of off-spec VME that it could not sell because of MCI's existing agreement to sell prime VME to Lubrizol, and Tasaka sought Mamajek's help.

According to Mamajek, he and Tasaka reached an agreement concerning the purchase and resale of off-spec VME. (Doc. No. 68-1 (Deposition of Conrad Mamajek ["Mamajek Dep."]) at 950-51.) Mamajek agreed to buy MCI's off-spec VME and sell it, with 30-60 day payment terms, at an agreed price (subject to changes in the market). Under their agreement, Mamajek was not obligated to buy a specific amount of off-spec VME, or any at all. (*Id*. at 952-53.) According to Mamajek, his oral agreement with Tasaka was good for a year and then it was "evergreen" and "kept rolling over every year after that." (*Id*. at 952-54.)

Mamajek testified that, under the alleged agreement, MCI was free to stop selling off-spec VME to Mamajek and Mamajek was free to stop buying the product and, if either took that action, they could not be sued by the other party. (*Id*. at 954-55.) That said, Mamajek testified that his alleged agreement with MCI was exclusive and, although he was not actually required to purchase any off-spec VME from MCI, MCI could not sell off-spec VME to anyone but Mamajek as long as he lived or wanted to buy the product. (*Id*. at 956-59.) Source did not have an agreement with MCI regarding off-spec VME, but had an agreement with Mamajek to re-sell the product. (*Id*. at 1036-38.) Source contends, however, that MCI's agreement survives Mamajek and applies to Source

"[f]orever." (Doc. No. 64-1 (Deposition of Chester Danforth ["Danforth Dep."]) at 638 (216-17).[8])

Plaintiffs contend that Mamajek's alleged exclusive agreement with MCI to buy and sell off-spec VME extends to, and obligates, all of MCI's affiliated companies, including MCA.[9] (Opp'n MCA SJ Mot. at 2690.) Plaintiffs argue that MCA has the same obligations as MCI under the alleged contract with Mamajek because: (1) MCA is a wholly-owned subsidiary controlled by MCI (including its performance of the alleged contract between MCI and Mamajek); (2) MCA is a third-party beneficiary to the MCI agreement; and (3) MCA is in privity with MCI. Plaintiffs further argue that MCA is estopped from denying that it owed plaintiffs any obligations under the alleged contract because MCA cannot accept the benefits of the alleged contract, but deny its burdens. (*Id*. at 2709-2712.) Finally, plaintiffs contend that MCA's alleged obligations extend to Source by virtue of the joint venture between Mamajek and Danforth, and because Source is a third-party beneficiary of Mamajek's agreement with MCI. (*Id*. at 2710-11.)

MCA argues that it is entitled to summary judgment on plaintiffs' claim for breach of contract because: (1) plaintiffs cannot show the existence of a contract and, even if they can, the contract is with MCI (who is not a party to this case), and not MCA; (2) any agreement is too indefinite to be enforceable; and (3) any agreement is unenforceable under the statute of frauds. (*See* MCA SJ Mot. at 2434.)

---

[8] Some depositions were filed in a format where four deposition transcript pages appear on a single page. In such cases, the first page number reference is to the page identification number generated by the Court's electronic filing system. The parenthetical page numbers refer to the deposition transcript page number.

[9] MCA is a wholly owned subsidiary of MCI. MCA and MCI, among other Mitsui entities, are part of the Mitsui Chemicals Group. (Doc. No. 63-1 (Deposition of Laurent Vernier ["Vernier Dep."]) at 469 (39-40); Fujimoto Dec. ¶¶ 4, 5.)

All of plaintiffs' arguments regarding MCA's contractual obligations to plaintiffs hinge on the enforceability of the Mamajek's agreement with Tasaka. In the absence of an enforceable agreement between Mamajek and MCI, there is no enforceable agreement against MCA. For the reasons that follow, the Court finds that Mamajek's alleged oral agreement with MCI is not enforceable under Ohio's statute of frauds.

## 1. Agreement with MCI unenforceable under Ohio's statute of frauds

MCA argues that plaintiffs' alleged oral contract with MCI is unenforceable under Ohio Rev. Code § 1302.04(A) because the agreement is for more than $500 in sales of off-spec VME.[10] That section provides:

> (A) Except as otherwise provided in this section a contract for the sale of goods for the price of five hundred dollars or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this division beyond the quantity of goods shown in such writing.

"The purpose of the statute of frauds is to prevent unfounded oral contract claims[.]" *Copeland Corp. v. Choice Fabricators Inc.*, 345 F. App'x 74, 77 (6th Cir. 2009) (citation omitted). "While the writing need only 'afford a basis for believing that the offered oral evidence rests on a real transaction,' it must satisfy 'three definite and invariable requirements': (1) it must 'evidence a contract for the sale of goods,' meaning it must indicate a contract has been made although the contract itself may be oral; (2) it must include 'authentication which identifies the party to be charged' and (3) 'it must specify a quantity.'" *Copeland Corp.*, 345 F. App'x at 76 (citing U.C.C. § 2-201 cmt. 1;

---

[10] Ohio's uniform commercial code § 1302.04(A) is identical to Uniform Commercial Code § 2-201(1).

*see also Columbus Trade Exch., Inc. v. AMCA Int'l Corp.,* 763 F. Supp. 946, 950 (S.D. Ohio 1991)). The writing must indicate a completed transaction for goods, not a future transaction. *Puritan Sys., Inc. v. M. G. Indus., Inc.*, No. 18093, 1997 WL 775681, at \*3 (Ohio Ct. App. Oct. 29, 1997) (citation omitted).

Plaintiffs do not dispute that § 1302.04 applies to the alleged agreement. There is no dispute that the agreement is oral—there are no faxes, emails, or other written communications with MCI, Tasaka, or his assistant, that state the terms of Mamajek's alleged agreement regarding off-spec VME. (Mamajek Dep. at 1106-1107; *see also* Doc. No. 92-3 at 2462 (Answer to Request for Admission No. 1).) Thus, the alleged agreement between Mamajek and MCI is not enforceable under § 1302.04(A).

### 2.  Merchant exception—§ 1302.04(B)

Even though an oral agreement for more than $500.00 may not be enforceable under § 1302.04(A), an agreement may still be enforceable if it satisfies the requirements of the merchant exception under § 1303.04(B).[11]

MCA posits that Source, Mamajek, MCA, and MCI are "merchants" within the meaning of the statute. (*See* MCA SJ Mot. at 2437 n.11.) A "'[m]erchant' means a person who deals in goods of the kind or otherwise by the person's occupation holds the person out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by the person's employment of an agent or broker or other intermediary who by the agent's, broker's, or other intermediary's occupation holds the person out as having such knowledge or skill."

---

[11] Ohio Revised Code § 1302.04(B) is identical to UCC § 2-201(2).

Ohio Rev. Code § 1302.01(A)(5). In opposing MCA's motion, plaintiffs do not dispute

that Source, Mamajek, MCI, and MCA are "merchants" under the statute.

Section 1302.04(B) provides:

Between merchants if within a reasonable time a writing in confirmation
of the contract and sufficient against the sender is received and the party
receiving it has reason to know its contents, it satisfies the requirements of
division (A) of this section against such party unless written notice of
objection to its contents is given within ten days after it is received.

In order "[f]or a writing to be 'sufficient against the sender,' it must meet the

requirements set forth in R.C. 1302.04(A)." *Aubin Indus., Inc. v. Smith,* No. C-1-04-681,

2007 WL 2626433, at *10 (S.D. Ohio Sept. 6, 2007).

First, the writing must be signed by the party to be charged. *Puritan
Systems, Inc. v. M.G. Industries, Inc.,* 1997 WL 775681, *2-4 (Ohio App.
9 Dist., 1997). Second, the writing must indicate that there has been a
completed transaction for goods, not a future transaction. *Id.* Third, the
writing must state the quantity of goods involved. In the case of a
requirements contract, a writing indicating that a buyer would get its
supply of a product from the seller and giving a definite time frame to the
agreement may be sufficient to fulfill the quantity term requirement.

*Id.*

Whether a confirmatory writing is sufficient against the sender is a question of

law. *Puritan Sys.,* 1997 WL 775681, at *3 (citation omitted); *see also Carcorp, Inc. v.

Chesrown Oldsmobile--GMC Truck, Inc.*, 823 N.E.2d 34, 39 (Ohio Ct. App. 2004) ("The

issue whether appellant's breach of contract claim is barred by R.C. 1301.12 [(statute of

frauds for personal property)] . . . was properly before the trial court for determination as

a matter of law.").

Plaintiffs contend that both MCI and MCA confirmed the oral agreement between

Mamajek and Tasaka by an email on July 25, 2012 from Bushman (an MCA employee)

to Mamajek, which states:

> Tokyo has confirmed that you are the only outlet for off spec VME. They
> are very concerned about potential confusion in market and are committed
> to the current route (i.e. you).

(Opp'n MCA SJ Mot. at 2694-95; Danforth Dep. at 638 (214-16); Doc. No. 92-11

(defense exhibit 8).)

MCA argues that this email does not satisfy the confirmatory writing requirement

of the merchant exception because Bushman's email does not constitute a signed writing

and says nothing about the terms of the agreement. In addition, the email was sent more

than a decade after the alleged formation of the oral contract, and does not specify a

quantity term, which is an essential requirement of Ohio Rev. Code § 1302.04(A). (MCA

SJ Mot. at 2436-37.)

### *Bushman's email to Mamajek is not sufficient against MCI*

An email can constitute a writing under § 1302.04(A). *See Copeland Corp.*, 345

F. App'x at 77. Bushman's email, however, makes no mention at all of any agreement, or

of any terms. Even if it did, the email is not from Tasaka or MCI.

There is no dispute that Mamajek made his alleged agreement with Tasaka and

MCI, not with MCA. Indeed, it is plaintiffs' position that "MCI, not MCA, had the

responsibility for the VME products and was the appropriate entity to make an agreement

for this business." (Opp'n MCA SJ Mot. at 2694 (citing Mamajek Dep. at 152-153).)

MCA itself does not produce off-spec VME—that product was produced in Japan or

Singapore. (Vernier Dep. at 473 (54-55).) As plaintiffs describe it, MCI brought "MCA

into the agreement to perform various obligations under it[,]" specifically, to perform a

number of administrative functions for which it received a 3.5% commission. (Opp'n

MCA SJ Mot. at 2709-10 (citing (Mamajek Dep. at 231).) Although MCA performed

administrative functions with respect to Mamajek's alleged agreement with MCI, even Mamajek agrees that MCA itself had no contractual obligation to him. (Mamajek Dep. at 231[12].)

It is undisputed that Bushman was an employee of MCA, not MCI, at the time he sent the July 25, 2012 email to Mamajek. Bushman's email purports to relay information from "Tokyo," but contains no indicia that the email is from MCI or Tasaka. *See Puritan Sys.,* 1997 WL 775681, at *3 (a written confirmation "sufficient against the sender," may be satisfied, for example, by a purchase order containing the logo and address of the party against whom the contract is to be enforced). Moreover, plaintiffs have advanced no evidence that when Bushman sent this email to Mamajek, he was acting as MCI's authorized agent or broker. Indeed, plaintiffs have advanced evidence to the contrary. (Opp'n MCA SJ Mot. at 2697 (Bushman was informed that if Tasaka was still in charge of off-spec VME sales Bushman would "be killed" for attempting to set the price independent of MCI. (citations omitted)).) Thus, Bushman's email is not sufficient to constitute a writing against MCI under the merchant exception to the statute of frauds, and the alleged oral agreement is unenforceable against MCI. Additionally, even if there were a viable theory that would allow plaintiffs to enforce the alleged oral agreement with MCI against MCA, any such oral agreement would be unenforceable against MCA for the same reason.

---

[12] Q. What obligations did Mitsui America have to you under the buy-sell agreement [with Tasaka]?
A. He was just support in the United States.
Q. You said "he." What obligations did Mitsui America, the company, have to you?
A. Probably none.

### *Bushman's email to Mamajek lacks the required quantity term*

Even if Bushman's email to Mamajek could be construed as a sufficient writing against MCI or MCA, it would still fail to satisfy the requirements for a confirmatory writing because it contains no quantity term. While the required writing need not contain all material terms of the parties agreement, "[t]he only term which must appear is the quantity term which need not be accurately stated but recovery is limited to the amount stated." Ohio Rev. Code § 1302.04 cmt. 1. "Typically . . . if a contract lacks a quantity term, it is runs afoul of the Statute of Frauds and is not enforceable." *Orchard Grp., Inc. v. Konica Med. Corp.*, 135 F.3d 421, 428 (6th Cir. 1998); *H & C Ag Servs., LLC v. Ohio Fresh Eggs, LLC*, 41 N.E.3d 915, 923 (Ohio Ct. App. 2015) (same) (quoting *Orchard Group,* 135 F.3d at 428)).

Bushman's email to Mamajek contains no reference to quantity of any sort. Plaintiffs argue that Bushman's email ("Tokyo has confirmed that you are the only outlet for off-spec VME") confirms a quantity of the output of all off-spec VME produced by the Mitsui Group, and is sufficient to satisfy the quantity requirement of § 1302.04(A). (Opp'n MCA SJ Mot. at 2714-15 (citing UCC 2-306 Official Comment 2).) It is true that, rather than specifying a quantity, the UCC allows parties to a contract to measure the quantity of goods by the good-faith output of the seller or the good-faith requirements of the buyer. *H & C Ag Servs.,* 41 N.E.3d at 923–24 (citation omitted). The email's reference to Mamajek as the "only outlet" for off-spec VME, however, cannot reasonably be construed or interpreted as statement by MCI or MCA that Mamajek will purchase all of the off-spec VME produced in good faith by the Mitsui Group. Moreover, Mamajek

concedes that his alleged agreement with Tasaka did not require him to purchase all, or any, off-spec VME. (Mamajek Dep. at 952-54.)

The decision in *H & C Ag Servs.* is instructive. In that case, the contract language provided for the purchase of "all available tonnage per year of manure" produced by the seller. This language was insufficient, however, to constitute an output contract under the statute of frauds for the sale of goods because the writing also provided that the specific quantity was to be determined by mutual agreement of the parties. *H & C Ag Servs.,* 41 N.E.3d at 924 ("The quantity term of an output or a requirements contract is not measured by a specific quantity mutually agreeable to the parties.") Similarly here, even if Bushman's email could be construed as output language, it would be insufficient under the statute of fraud's quantity requirement because the undisputed evidence on summary judgment is that amount of off-spec VME to be purchased by Mamajek was entirely discretionary. Thus, Bushman's email is not sufficient under the merchant exception to the statute of frauds because it fails to include a quantity term, and Mamajek's agreement with MCI is not enforceable.

### *Bushman's email to Mamajek was not sent in a reasonable time*

Finally, MCA argues that Bushman's email to Mamajek in July 2012—sent approximately 13 years after Mamajek's alleged oral agreement with Tasaka—cannot satisfy the merchant exception because it was not received by Mamajek within a reasonable period of time. (MCA SJ Mot. at 2437.) Plaintiffs have provided the Court with no legal authority that a written confirmation, sent 13 years after the alleged oral agreement was made, constitutes a reasonable time under the merchant exception. Indeed, plaintiffs do not address the issue of timeliness in their opposition to MCA's motion.

The Court finds as a matter of law that a writing sent 13 years after the alleged oral agreement between Tasaka and Mamajek was not sent within a reasonable period of time as required by § 1302.04(B). *See Aubin Indus., Inc. v. Smith*, No. C-1-04-681, 2007 WL 2626433, at *10 (S.D. Ohio Sept. 6, 2007) (writing sent 2 years after the parties entered into the alleged agreement was not sent within a reasonable time), *aff'd,* 321 F. App'x 422 (6th Cir. 2008). Thus, this requirement of the merchant exception is also not satisfied, and the alleged oral agreement between Mamajek and Tasaka is not enforceable.

### *Bushman's interoffice message to Nakagawa, Mizuno, and Okabe*

In support of their argument that Bushman's email to Mamajek satisfies the statue of frauds, plaintiffs advance an undated interoffice message on MCA letterhead from Bushman to Nakagawa, Mizuno, and Okabe. (Opp'n MCA SJ Mot. at 2715 (citing Doc. No. 99-15).) Bushman's message deals with a product unrelated to off-spec VME— "Hiwax." The only reference to off-spec VME in the message is as follows: "Source Associates is selling our off spec VME. They are doing a good job of moving this material in a way that does not interfere with our primary VME business with Lubrizol." (*Id.*)

Bushman's undated message fails to satisfy the writing requirement of Ohio's statute of frauds for the sale of goods for the same reasons that Bushman's email to Mamajek fails. Moreover, the undated message does nothing to create a genuine dispute of material fact as to the issue of whether Bushman's email to Mamajek satisfies the merchant exception to Ohio's statute of frauds.

### 3. Partial performance—§ 1302.04(C)

Plaintiffs also argue that Mamajek's oral agreement is enforceable under the statute of frauds partial performance exception found in § 1302.04(C)(3). Under that section:

> A contract which does not satisfy the requirements of division (A) of this section but which is valid in other respects is enforceable:
>
> * * *
>
> (3) with respect to goods for which payment has been made and accepted or which have been received and accepted in accordance with section 1302.64 of the Revised Code.

The partial performance exception, however, is not applicable to plaintiffs' claim that MCA is contractually required to exclusively and perpetually sell off-spec VME to plaintiffs. "'Partial performance' as a substitute for the required memorandum can validate the contract *only* for the goods which have been accepted or for which payment has been made and accepted." Ohio Rev. Code 1302.04 cmt. 2 (emphasis added); *E.C. Styberg Eng'g Co. v. Eaton Corp.*, 492 F.3d 912, 919 n.4 (7th Cir. 2007) (partial performance exception to the statute of frauds limits recovery to the scope of the contract performed) (applying Ohio law and citing Ohio Rev. Code § 1302.04 cmt. 2 and *Royal Doors, Inc. v. Hamilton–Parker Co.,* No. 92AP–938, 1993 WL 141233, at *5–6 (Ohio Ct. App. April 29, 1993)); *see also Orteck Int'l Inc. v. Transpacific Tire Wheel, Inc.*, 704 F. Supp. 2d 499, 514 (D. Md. 2010), *aff'd sub nom. Orteck Int'l v. TransPacific Tire & Wheel, Inc.*, 457 F. App'x 256 (4th Cir. 2011) ("[W]hile the 'part performance exception' may be used to prove a contract existed for goods for which payment was made, it does not apply prospectively to ensure that goods will be delivered in the future or to establish an exclusive right to buy those goods.").

For all of the foregoing reasons, the Court finds that there is no genuine dispute of material fact that Mamajek's alleged oral agreement with MCI fails to satisfy the requirements of Ohio's statute of frauds, or the merchant and partial performance exceptions, and is unenforceable as a matter of law against MCI or MCA. Even if plaintiffs attempt to claim a separate oral agreement with MCA for the sale of off-spec VME, and that Bushman's email to Mamajek in July 2012 should be construed as a confirmatory writing with respect to MCA, any such agreement would also fail to satisfy all of the other requirements of Ohio's statute of frauds, as well as the merchant and partial performance exceptions, for the reasons previously discussed.

**B. Claim two—Breach of covenant of good faith and fair dealing against MCA**

In their second claim for relief, plaintiffs allege that MCA breached its implied covenant of good faith and fair dealing under Mamajek's oral contract with Tasaka regarding the sale of off-spec VME. "Ohio does not recognize a standalone claim for breach of the implied duty of good faith and fair dealing absent a valid breach of contract claim." *Eclipse Res.-Ohio, LLC v. Madzia*, No. 2:15-CV-177, 2016 WL 814958, at *15 (S.D. Ohio Mar. 2, 2016) (citing *Wendy's Int'l, Inc. v. Saverin*, 337 F. App'x 471, 476 (6th Cir. 2009)). A duty of good faith "does not create an independent basis for a cause of action." *Wendy's*, 337 F. App'x at 476-77 (citing *Thomasville Furniture Indus., Inc. v. JGR Inc.*, 3 F. App'x 467, 472 (6th Cir. 2001) (quoting *Bolling v. Clevepak Corp.*, 484 N.E.2d 1367, 1376 (Ohio Ct. App. 1984))); *see also Ogle v. BAC Home Loans Servicing LP*, 924 F. Supp. 2d 902, 915 (S.D. Ohio 2013) (citing *Interstate Gas Supply, Inc. v. Calex Corp.*, No. 04AP–980, 2006 WL 328679, at *20 (Ohio Ct. App. Feb. 14, 2006)

("an allegation of a breach of the implied covenant of good faith cannot stand alone as a separate cause of action from a breach of contract claim")).

The Court has determined that MCA is entitled to summary judgment on plaintiffs' claim for breach of contract. In the absence of a valid breach of contract claim, MCA is also entitled to summary judgment on plaintiffs' second claim for relief. *Interstate Gas Supply*, 2006 WL 328679, at *21 ("[I]nasmuch as we have already determined that IGS did not breach its contract with Calex and Wooster, we find that summary judgment was properly granted in favor of IGS on Calex and Wooster's claim of breach of good faith and fair dealing.").

Plaintiffs alternatively argue that their second claim for relief is based upon the duty of MCA to act honestly and in good faith to its customers, imposed by the Mitsui's governance documents, which exists separate and apart from any agreement regarding off-spec VME. (Opp'n MCA SJ Mot. at 2693 (citing Doc. No. 99-9 at 2895 and 2902), 2713, 2176.) Plaintiffs advance the testimony of Vernier regarding the governance document that plaintiffs argue imposes this duty on MCA. (Vernier Dep. at 478-79 (77-79).) But there is no evidence that this document was in effect during the relevant time periods. Even if it were, plaintiff has failed to cite any authority under Ohio law that a claim for breach of the duty of good faith and fair dealing, in the absence of a contract, can arise from the terms of a corporate governance document.

MCA is entitled to judgment on plaintiffs' second claim for relief as a matter of law.

## C. Claim three—Tortious interference by Bushman with MCA

In their third claim for relief, plaintiffs allege that Bushman tortiously interfered with their contractual and business relationship with MCA.

### 1. Bushman entitled to summary judgment on tortious interference with contract claim

In Ohio, to establish a claim of tortious interference with a contract, a plaintiff must show: "(1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) the lack of justification, and (5) resulting damages." *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 707 N.E.2d 853, 858 (Ohio 1999) (citing *Kenty v. Transamerica Premium Ins. Co.*, 650 N.E.2d 863 (Ohio 1995)).

The Court has concluded that there is no enforceable contract between plaintiffs and MCA. Thus, plaintiffs cannot prove an essential element of their claim, and Bushman is entitled to summary judgment on plaintiffs' claim against Bushman for tortious interference with a contract with MCA. *Celotex,* 477 U.S. at 322-23.

## 2. Bushman entitled to summary judgment on tortious interference with business claim

With respect to plaintiffs' claim for tortious interference with their business relationship with MCA,[13]

> [u]nder Ohio law, the tort of business interference occurs when one who, "without a privilege to do so, induces or otherwise purposely causes *a third party* not to enter into, or continue, a business relationship with another, or perform a contract with another, is liable to the other for the harm caused thereby." *Juhasz v. Quik Shops, Inc.,* 55 Ohio App. 2d 51, 57, 379 N.E.2d 235, 238 (Ct. App. 9th Dist. 1977) (emphasis added). In order for a person to interfere, the person must not be party to the [business relationship]. *Scanlon v. Gordon F. Stofer & Bros., Co.,* Nos. \ 1989 WL 69400 at *4 (Ohio Ct. App. 8th Dist. 1989);

*AAA Installers v. Sears Holdings Corp.*, 764 F. Supp. 2d 931, 942 (S.D. Ohio 2011); *Wauseon Plaza Ltd. P'ship v. Wauseon Hardware Co.*, 807 N.E.2d 953, 962 (Ohio Ct. App. 2004) (same) (citing *A & B–Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 651 N.E.2d 1283 (Ohio 1995)).

As the Court has previously noted, "[a]lthough Bushman's actions (i.e., his 'interference') might have been privileged by virtue of his position with Mitsui, if he instead acted outside the scope of his duties and in furtherance of his own interests, he may be personally liable for tortious interference." *Source Assocs.,* 2016 WL 828785, at *4 (citing *Scanlon v. Gordon F. Stofer & Bros., Co.*, Nos. 55467/55472, 1989 WL 69400, at * 10 (Ohio Ct. App. June 22, 1989) ("a corporate … employee of a contracting party, *while acting within the scope of his position or employment*, is immune from suit for a claim of tortious interference with a contract") (emphasis added) (citations omitted)); *see also Geisy v. Kforce, Inc.,* No. 2:05–cv–366, 2005 WL 2806304, at *2 (S.D. Ohio Oct.

---

[13] For the purpose of this analysis, the Court will assume a business relationship between plaintiffs and MCA.

26, 2005) (only "strangers to the business relationship," not the employees of a party to the relationship acting within their scope of employment, may be held liable for tortious interference).

An act is within the scope of employment when the employee is engaged in an activity that is logically related to the business of the employer. *See The William Powell Co. v. Nat'l Indem. Co.*, 141 F. Supp. 3d 773, 785 (S.D. Ohio 2015) (citing *Theobald v. University of Cincinnati,* 857 N.E.2d 573, 577 (Ohio 2006)). Only where the employee's act has no relation to the employer's business is an employee acting outside the scope of his employment. *See William Powell*, 141 F. Supp. 3d at 785 (citations omitted).

In order to act outside the scope of employment, an employee's acts must be taken solely for his own benefit. *Miller v. Wikel Mfg. Co.*, 545 N.E.2d 76, 80 (Ohio 1989); *Gator Dev. Corp. v. VHH, Ltd.*, No. C-080193, 2009 WL 1027584, at *7 (Ohio Ct. App. Apr. 17, 2009) (quoting *Miller*); *West v. Visteon Corp.*, 367 F. Supp. 2d 1160, 1164 (N.D. Ohio 2005). Conduct initiated, at least in part, to further or promote the employer's business is within the scope of employment. *Martin v. Cent. Ohio Transit Auth.,* 590 N.E.2d 411, 417 (Ohio Ct. App. 1990).

Bushman argues that he is entitled to summary judgment because his alleged acts of interference all took place while he was an employee of MCA and were privileged by virtue of his employment. Plaintiffs claim that Bushman did not act as an employee of MCA, but independently, and is therefore liable for tortiously interfering with plaintiffs' business relationship with MCA.

There is no dispute that Bushman was the Director of Business Development at MCA for approximately 24 years and during all relevant times at issue here, and that his

responsibilities included MCA's off-spec VME business. Naoya Sakamoto ("Sakamoto") was Bushman's direct supervisor. (Doc. No. 69-1 (Deposition of Gregory Bushman ["Bushman Dep."]) at 1219.) Shortly before June 13, 2013, Bushman met with Sakamoto and told his supervisor that he was going to retire at the end of 2013, and recommended to Sakamoto that Bushman become MCA's outlet for off-spec VME in 2014 through his company, NXT.

On June 13, 2013, Bushman sent an email to Mamajek and Danforth informing them that he was retiring at the end of the year and that his retirement would impact their off-spec VME business: "the current business route through Source Associates and Conrad A. Mamajek, Inc. will not be continued. Mitsui has decided that the last deliveries will be made in December of this year." (Mamajek Dep at 1050-51; Doc. No. 100-19.) There is no dispute that when Bushman sent this email, he did not have authority from MCA to terminate plaintiffs as a customer. Indeed, Bushman's email had no effect on the off-spec VME business relationship between MCA and plaintiffs because, at that time, "MCA management had not yet considered or decided whether to switch the off-spec VME business from Source to NXT." (Bushman Dep. at 1323; Fujimoto Dec. ¶ 19.)

In September 2013, Bushman made a presentation to his superiors regarding the direction of MCA's off-spec VME business after his retirement and the reasons for his recommendation that the off-spec VME business be directed to NXT. (Bushman Dep. at 1222-23 (51-52).) The presentation was attended by Bushman's supervisor, Sakamoto, and by Mr. Kaide, Mr. Hayashida, and Ms. Ward. (Doc. No. 66-1 (Deposition of Koji ["Fujimoto Dep."]) at 744 (24).) When Bushman made his presentation, he was an MCA

employee and was responsible for its VME business, as he had been for more than two decades.

There is no dispute that Bushman told MCA that Mamajek desired to discontinue the off-spec VME business, and that there were health issues and strained relationships with respect to Mamajek and Danforth.[14] (Bushman Dep. at 1223-24 (52-53), 1251-53 (80-83), 1333 (162)); Fujimoto Dep. at 744 (23-25) and 754 (63); Vernier Dep. at 481 (87-88).) MCA recognized that Bushman had a conflict of interest with respect to the off-spec VME business because of his ownership interest in NXT, and that he must be excluded from MCA's decision regarding the direction of that business following Bushman's retirement. (Fujimoto Dep. at 748 (39-40).)

When MCA made its decision to direct the off-spec VME business to NXT beginning in 2014, Sakamoto, not Bushman, informed plaintiffs by letter dated October 28, 2013. (Doc. No. 93-1.) Plaintiffs have advanced no evidence to rebut MCA's evidence that its decision to direct off-spec VME sales to NXT was made independent of Bushman and in MCA's own economic interest, or offered any evidence that Bushman coerced or intimidated MCA with respect to its decision. (Fujimoto Dep. at 754-55 (65-66).)

"Whether an employee was acting within the scope of his employment is a question of law, not fact, made in accordance with the law of the state where the conduct

---

[14] The parties dispute whether plaintiffs desired to discontinue their business, but do not appear to dispute that plaintiffs had health issues at the time Bushman made his presentation. Mamajek was not involved in the off-spec business for the first six months of 2013 due to health issues. (Mamajek Dep. 905-06 (19-20); Danforth Dep. at 626 (167).) Danforth had issues with his eyesight in the last half of 2013 and into 2014, and had two surgeries within a month on his left eye. (Danforth Dep. at 633 (196-97), 638-39 (217-18).) That said, whether plaintiffs did or did not desire to discontinue their business is not relevant to the issue of whether Bushman was acting in the scope of his employment with respect to his recommendation to Sakamoto and others that MCA direct its off-spec VME business to NXT.

occurred." *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1143 (6th Cir. 1996). The parties apply Ohio law to their arguments on summary judgment.[15]

Based on the undisputed record, the Court finds as a matter of law that Bushman did not act outside the scope of his employment with respect to his actions and recommendation to MCA concerning the direction of its off-spec VME business following his retirement. MCA was in the business of selling off-spec VME. At all relevant times, Bushman was employed by MCA and responsible for its off-spec VME business. His actions and recommendation regarding the direction of MCA's off-spec VME business fell within his area of responsibility and were logically related to MCA's business interests. *William Powell*, 141 F. Supp. 3d at 785.

The fact that Bushman himself would benefit if MCA chose to follow his recommendation is insufficient to move his actions outside the scope of his employment. *Hastings v. J.E. Scott Corp.*, No. 2003 CA 32, 2004 WL 759658, at *4 (Ohio Ct. App. Apr. 9, 2004) ("[A]lthough Ronald Scott's actions may have benefitted him individually, those actions were also taken for the benefit of the corporation.") (citing *Miller*, 545 N.E.2d 76 (Ohio 1989)). Bushman's motives regarding his recommendation to MCA also do not remove his actions from the scope of his employment as director of MCA's VME business. *See Bishop v. Children's Ctr. for Developmental Enrichment*, No. 2:08-CV-766, 2011 WL 3443518, at *14 (S.D. Ohio Aug. 8, 2011) (defendant CEO's personal animosity against plaintiff does not take expulsion of plaintiff's child outside of the scope

---

[15] The facts are not clear as to Bushman's location when he engaged in the alleged conduct at issue here. Even if the Court applied New York law, however, the outcome of the Court's analysis would be the same. *See Zeranti v. United States*, 167 F. Supp. 3d 465, 469 (W.D.N.Y. 2016) (an employees' conduct falls outside the scope of his employment if done "solely for personal motives unrelated to the furtherance of the employe[r]'s business.") (citation omitted).

of her job duties). "Where . . . the act complained of is within the scope of a defendant's duties, a cause of action in tort or monetary damages does not lie. Nor can liability be predicated simply upon the characterization of such conduct as malicious." *See Anderson v. Minter*, 291 N.E.2d 457, 461 (1972) (citations omitted); *RMI Titanium*, 78 F.3d at 1143 (an employee does not act outside the scope of his employment simply because his act is intentional or malicious) (citing *Henson v. NASA,* 14 F.3d 1143, 1147 (6th Cir. 1994)). Here, it cannot be said that Bushman's actions had no relation to MCA's off-spec VME business, or that his actions did not, at least in part, further MCA's business interests. *William Powell*, 141 F. Supp. 3d at 785; *Martin*, 590 N.E.2d at 417; *cf. Groob v. KeyBank*, 843 N.E.2d 1170, 1177–78 (Ohio 2006) (KeyBank not liable for tortious act of employee acting outside the scope of her employment where employee took loan information of bank customer who was denied a loan to purchase a business, and used that information to purchase the business for herself).

The Court concludes as a matter of law that Bushman was acting within the scope of his employment with respect to his actions related MCA's off-spec VME business. Thus, Bushman cannot be individually liable for these actions. In addition, there can be no claim for tortious interference against Bushman for actions taken in the scope of his employment because, acting as MCA's employee, MCA cannot interfere with its own business relationship with plaintiffs. *See AAA Installers*, 764 F. Supp. 2d at 942 ("Sears and AAA are parties to the contract. It would not be possible for Sears to wrongly interfere with its own contract with AAA."); *see also Lundeen v. Smith-Hoke*, No. 15AP-36, 2015 WL 8196506, at *9 (Ohio Ct. App. Dec. 8, 2015) (citing *Geisy,* 2005 WL 2806304, at *2 (it is only "strangers to the business relationship," not the employees of a

party to the relationship acting within their scope of employment, that may be held liable for tortious interference)).

Accordingly, Bushman is entitled to summary judgment on plaintiffs' claim that he is liable for tortious interference of plaintiffs' business relationship with MCA.

## D. Claim four—Tortious interference by MCA with Brindle and Complex

In their fourth claim for relief, plaintiffs allege that MCA tortiously interfered with their contractual and business relationships with Brindle and Complex.

### 1. MCA entitled to summary judgment on tortious interference with contract claim

The Court previously dismissed claim four as to Bushman and Breon, finding that plaintiffs failed to allege any factual support for their assertion in the first amended complaint that plaintiffs' had a contractual arrangement with Brindle and Complex. *Source Assocs.,* 2016 WL 828785, at *4. On summary judgment, MCA offers the deposition of Mamajek, who testified that he did not have a contract with Complex or Brindle to purchase off-spec VME in any amount, and that each sale was individual. (Mamajek Dep. at 965-67.) Source also had no agreement with Bridle or Complex that required them to purchase off-spec VME from plaintiffs, or prevented them approaching MCA directly to purchase off-spec VME. (Danforth Dep. at 598 (56-57).)

The existence of a contract is the first element of a claim for tortious interference with contract. There is no genuine dispute of material fact that plaintiffs did not have a contract with either Brindle or Complex to purchase off-spec VME. Thus, plaintiffs cannot prove an essential element of their claim for tortious interference with contract, and MCA is entitled to summary judgment. *Celotex,* 477 U.S. at 322-23.

## 2. MCA entitled to summary judgment on tortious interference with business relationship claim

The elements for establishing tortious interference with a business relationship are (1) a business relationship; (2) knowledge of the relationship by the tortfeasor; (3) an intentional and improper act by the tortfeasor terminating a business relationship; (4) the lack of privilege on the part of the tortfeasor; and (5) resulting damages. *Hahn v. Rauch*, 602 F. Supp. 2d 895, 906 (N.D. Ohio 2008) (citing *Brookeside Ambulance, Inc. v. Walker Ambulance Serv.,* 678 N.E.2d 248, 252 (Ohio Ct. App. 1996)).

MCA argues on summary judgment that, because the Court dismissed plaintiffs' claims for tortious interference with business relationships with Complex and Brindle as against Breon and Bushman, there is no basis upon which to hold MCA liable for alleged tortious interference. (MCA SJ Mot. at 2441-42.) In addition, MCA argues that only Source can assert this claim because CAM had no business relationship with Brindle and Complex—it was Source that processed the orders, paid for the off-spec VME, then resold the product to Brindle and Complex. Mamajek, not CAM, negotiated pricing with Brindle and Complex, and Mamajek is not a plaintiff in this case.[16] (MCA SJ Mot. at 2442.) Finally, MCA argues that summary judgment is appropriate because only improper interference with a business relationship is actionable, and there is no evidence of improper interference by MCA. (MCA SJ Mot. at 2442-43.)

With respect to MCA's last argument, the parties agree that there can be no claim for tortious interference with a business relationship unless the interference is improper.

---

[16] Plaintiffs' opposition does not address MCA's first or second arguments. With respect to the second, Mamajek was arguably acting as CAM's agent, however, the Court will not address this issue because it is unnecessary to resolve MCA's motion as to this claim.

(MCA SJ Mot. at 2442-43; Opp'n MCA SJ Mot. at 2721).[17] "Significant to the question of the nature of the actor's conduct is whether the actor engaged in coercive or intimidating conduct." *Eastside Lincoln Mercury, Inc. v. Ford Motor Co.*, No. C-1-01-567, 2004 WL 6033074, at *8 (S.D. Ohio July 15, 2004) (citing *Sancap Abrasives Corp. v. Swiss Indus. Abrasives Grp.,* 68 F. Supp. 2d 853, 861 (N.D. Ohio 1999) (citing *Kand Med. v. Freund Med. Prods.,* 963 F.2d 125, 128 (6th Cir. 1992))). In addition, defendant must act intentionally and with malice. *Bertek Sys., Inc. v. Lexmark Int'l, Inc.*, No. 1:04-CV-00700, 2005 WL 3503065, at *11 (S.D. Ohio Dec. 21, 2005) ("As to [plaintiff's] claim of tortious interference with a business relationship, the Court need not analyze the issue past the requirement that the defendant acted with malice. [Plaintiff] has not met its burden in demonstrating that a genuine issue of material fact exists concerning malice.").

MCA argues that it did not act improperly in terminating off-spec VME sales to plaintiffs—which effectively ended plaintiffs' business relationship with Brindle and Complex—and directing those sales to NXT. MCA advances evidence that this action was taken based upon information from Bushman raising concerns for the future of off-spec VME sales due to Mamajek's health and desire to retire, and strained relationships with Danforth. (*See* Bushman Dep. at 1223-24 (52-53), 1251-53 (80-83), 1333 (162));

---

[17] In Ohio,

> in determining whether an actor has acted improperly in intentionally interfering with a contract or prospective contract of another, consideration should be given to the following factors: (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference, and (g) the relations between the parties.

*Fred Siegel Co.*, 707 N.E.2d at 860; *see also Marlite, Inc. v. Canas*, No. 5:09CV1401, 2009 WL 7272686, at *8 (N.D. Ohio July 22, 2009) (same) (citing *Dryden v. Cincinnati Bell Tel.,* 734 N.E.2d 409, 414 (Ohio Ct. App. 1999) (citing RESTATEMENT OF THE LAW (SECOND), TORTS § 767)); *Sancap*, 68 F. Supp. 2d at 861 (same) (quoting *Kand,* 963 F.2d at 128).

Fujimoto Dep. at 754 (63); Vernier Dep. at 481 (87-88).) MCA understood from Bushman that plaintiffs were going to discontinue their purchase of off-spec VME. (Fujimoto Dep. at 744 (23-24).) According to Mamajek, the off-spec VME business was grounded in his relationship with Tasaka and, if he retired, the off-spec VME relationship with Source "would probably dry up." (Mamajek Dep. at 1115.) In addition, Bushman, who was planning to retire, raised concerns about the ability of his successor to manage the off-spec VME relationship with plaintiffs, and recommended to MCA that the off-spec VME business instead be routed through NXT. (Bushman Dep. at 1387.)

MCA recognized that Bushman had a conflict of interest regarding the direction of the off-spec VME business after he retired, and that, in order for MCA to make an independent decision in its own economic interest, Bushman should be excluded from that process. (Fujumoto Dep. at 748 (39-40), 754-44 (65-66).) Ultimately, MCA decided it was in its best economic interest to direct the off-spec VME business from plaintiffs to NXT. (*Id*. at 755-56 (65-70).)

Plaintiffs do not dispute that Bushman made these representations to MCA regarding the direction of the off-spec VME business after his retirement, or that MCA excluded Bushman from the decision-making process because of a conflict of interest. Plaintiffs' dispute the underlying facts presented by Bushman to MCA and contend that MCA should have been suspicious of the facts Bushman presented to them, and should have permitted Source and CAM to make their own presentation. Plaintiffs, however, have failed to rebut the evidence advanced by MCA that it trusted and relied upon Bushman based upon his longtime employment with MCA and oversight of the off-spec VME business, or offer any evidence that MCA intentionally failed to verify Bushman's

statements regarding Source and CAM in order to interfere with plaintiffs' relationship with Brindle and Complex.[18] (Fujimoto Dep. at 748 (40), 752-53 (57-56) (MCA trusted Bushman's presentation); Vernier Dep. at 482 (89-90) (we had no reason not to trust Bushman).)

Plaintiffs also failed to rebut the evidence advanced by MCA that its decision to direct its VME business to NXT rather than plaintiffs was made in order to further its own economic interest. *See A-1 Credit & Assur. Co. v. Trans Union Credit Info. Co.*, 678 F. Supp. 1147 (E.D. Pa. 1988) (unilateral decision to do business with another entity is not tortious interference with a business relationship). Nor is there any evidence from which a reasonable jury could conclude that MCA's decision was motivated by a desire to harm plaintiffs' relationship with Brindle and Complex. *Sancap*, 68 F. Supp. 2d at 861 (granting summary judgment where there was no evidence that defendant intended to injure plaintiff "rather than simply further its own economic interests.") Plaintiffs' business relationship with Brindle and Complex ended as a consequence of MCA's decision to redirect the VME business to NXT in service of its own economic interest. MCA's knowledge of this consequence, however, does not convert its business decision into tortious interference. Restatement (Second) of Torts § 767 cmt. d (1979) ("[I]f there is no desire at all to accomplish the interference and it is brought about only as a necessary consequence of the conduct of the actor engaged in for an entirely different purpose, his knowledge of this makes the interference intentional, but the factor of motive carries little weight toward producing a determination that the interference was

---

[18] Even if MCA were negligent in this regard, such negligence would be insufficient to establish a claim for tortious interference with plaintiffs' business relationship. *Wauseon Plaza*, 807 N.E.2d at 963 (interference must be intentional because Ohio law does not recognize negligent interference with a business relationship) (citation omitted); *Aetna Cas. & Sur. Co. v. Leahey Constr. Co.*, 22 F. Supp. 2d 695, 705 (N.D. Ohio 1998) (same) (citations omitted).

improper."); *see also Excel Energy, Inc. v. Cannelton Sales Co.*, 246 F. App x 953, 967 (6th Cir. 2007) (quoting *ATC Distrib. Group, Inc. v. Whatever It Takes Transmissions & Parts, Inc.,* 402 F.3d 700, 717 (6th Cir. 2005) ("'[S]imply attempting to advance one's own legitimate economic interests at the expense of another's interests does not constitute malice.'") (applying Kentucky law, where interference cases turn almost entirely on defendant's motive, purpose, and means to determine if conduct was intentional and improper)).

For all of the foregoing reasons, the Court finds that there is no genuine dispute of material fact from which a reasonable jury could reasonably find that MCA tortiously interfered with plaintiffs' business relationship with Brindle and Complex, and MCA is entitled to judgment as a matter of law.

### E. Claim five—Unjust enrichment

Claim five alleges unjust enrichment against all defendants.[19] The elements of unjust enrichment, a quasi-contractual claim, are: (1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment. *R.C. Olmstead, Inc. v. CU Interface, LLC*, 657 F. Supp. 2d 878, 898 (N.D. Ohio 2009) (citing *Hambleton v. R.G. Barry Corp.,* 465 N.E.2d 1298, 1302 (Ohio 1984)).

### 1. MCA entitled to summary judgment

Even though the Court has concluded that MCA is entitled to summary judgment on the first claim for relief for breach of contract, plaintiffs may still bring a claim for

---

[19] As a remedy, plaintiffs seek the disgorgement of profits. (FAC ¶ 47.) Even were they to prevail on this claim, plaintiffs are not entitled to such damages. "'Recovery under unjust enrichment is designed to compensate the plaintiff for the benefit he has conferred upon another, not to compensate him for a loss suffered.'" *Kline v. Mortg. Elec. Sec. Sys.*, 154 F. Supp. 3d 567, 595 (S.D. Ohio 2015) (quoting *Jones v. Jones*, 903 N.E.2d 329, 337 (Ohio Ct. App. 2008)).

unjust enrichment. *MVB Mortg. Corp. v. F.D.I.C.*, No. 2:08-CV-771, 2009 WL 3259413, at *4 (S.D. Ohio Oct. 6, 2009) (even if an express contract is unenforceable as a result of the operation of a statute of frauds, a plaintiff may proceed on a claim for unjust enrichment) (citing *Hummel v. Hummel*, 14 N.E.2d 923 (Ohio 1938)). Plaintiffs allege that MCA benefitted from its refusal to sell off-spec VME to plaintiffs and misuse of plaintiffs' information, thus depriving plaintiffs of their business and profits. (FAC ¶¶ 43-44.)

The proper measure of damages in an unjust enrichment claim is the value of the services provided to defendant—any damages due would be the amount of benefit received by MCA. *Alexander v. Motorists Mut. Ins. Co.*, No. C-110836, 2012 WL 3711299, at *4 (Ohio Ct. App. Aug. 29, 2012) (citations omitted); *Meridien Mktg. Grp., Inc. v. J & E Bldg. Grp., Inc.*, No, 2011-CA-02, 2011 WL 4424834, at *6 (Ohio Ct. App. Sept. 23, 2011) (citation omitted).

MCA argues that it has not been unjustly enriched by directing sales of off-spec VME to NXT rather than plaintiffs because MCA charges NXT the same price for off-spec VME that plaintiffs paid.[20] (Fujimoto Dec. ¶ 21; MCA SJ Mot. at 2446 (citing *Alexander*, 2012 WL 3711299, at *4 (defendant would have received premiums for insurance regardless of which agent was servicing the account).)

Plaintiffs contend that MCA's argument misses the point. According to plaintiffs, the benefit conferred upon MCA goes back to 1998, when Mamajek and Tasaka made their agreement and plaintiffs thereafter developed a market for off-spec VME. Plaintiffs argue that, but for their efforts to develop the off-spec VME market, the Mitsui Group's

---

[20] MCA purchases both prime and off spec VME from MCI or Mitsui Elastomers Singapore Pte Ltd ("MELS") and sells it to North American companies. (Fujimoto Dec. ¶ 10.)

off-spec VME would still be sitting in warehouses and MCA would not have earned 3.5% for the administration of MCI's agreement with Mamajek. (Opp'n MCA SJ Mot. at 2723-24.) While that may be true, the fact remains that plaintiffs developed the off-spec VME market for their own economic interests, and plaintiffs acknowledge that their business "was a very, very substantial, profitable business." (Danforth Dep. at 616 (128).) Indeed, the annual income for each plaintiff from the off-spec VME sales was approximately $500,000.00. (Danforth Dep. at 644 (238-40).) There is no unjust enrichment under these facts.

The plaintiff's theory in *LightStyles, Ltd. ex rel. Haller v. Marvin Lumber & Cedar Co.*, No. 1:13-CV-1510, 2015 WL 4078807 (M.D. Pa. July 6, 2015) was similar to the plaintiff's theory herein, and that case illustrates the flaw in plaintiffs' claim. In *LightStyles*, defendants terminated plaintiff's distributorship and took over plaintiff's sales force and dealer network. LightStyles argued that defendant was unjustly enriched by the value of the distribution network that it had developed. *LightStyles,* 2015 WL 4078807, at *14. Applying Pennsylvania law (where the elements of unjust enrichment are virtually identical to Ohio law)[21] the court in *LightStyles* found that defendant was entitled to summary judgment on LightStyles' unjust enrichment claim because it had acted to advance its own interest and received benefit from its business relationship with defendant. (*Id*.)

---

[21] "Under Pennsylvania law, unjust enrichment has the following elements: (1) plaintiff conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) acceptance and retention by the defendant of the benefits, under the circumstances, would make it inequitable for the defendant to retain the benefit without paying for the value of the benefit." *LightStyles, Ltd. ex rel. Haller v. Marvin Lumber & Cedar Co.*, No. 1:13-CV-1510, 2015 WL 4078807, at *14 (M.D. Pa. July 6, 2015) (internal quotation marks and citation omitted).

Also instructive is *Allen v. Ford Motor Co.*, 8 F. Supp. 2d 702 (N.D. Ohio 1998), *aff'd,* 188 F.3d 506 (6th Cir. 1999). Applying Ohio law, the court in *Allen* held that defendant was entitled to summary judgment on plaintiff's claim for unjust enrichment where plaintiff, a prospective purchaser of a dealership, failed to establish that defendant was unjustly enriched when plaintiff managed the dealership for six months, and the dealership's value increased during that time, because plaintiff was paid a salary and received all of the profits of the dealership while he managed it. *Id.* at 707.

In this case, plaintiffs developed the off-spec VME to advance their own economic interests, and profited handsomely from their business relationship with MCA for approximately fifteen (15) years. There is no evidence from which a reasonable jury could conclude that MCA was unjustly enriched by plaintiffs' development of a profitable off-spec VME market for their own benefit. MCA is entitled to summary judgment on plaintiffs' claim for unjust enrichment.

### 2. Bushman and Breon entitled to summary judgment

Plaintiffs claim they invested a great deal of time and effort in the development of their off-spec VME business, that Bushman and Breon unjustly benefitted from the use of plaintiffs' information and MCA's decision to terminate sales of off-spec VME to plaintiffs. (FAC ¶44.) Bushman and Breon argue that they are entitled to summary judgment on three specific grounds: (1) plaintiffs' unjust enrichment claim is preempted by OUTSA; (2) plaintiffs' customer and pricing information is not proprietary or confidential; and (3) plaintiffs' unjust enrichment claim cannot be based upon tortious interference with business or contract.[22] (B&B SJ Mot. at 2658-60.) In opposition,

---

[22] Plaintiffs do not respond to this argument in their opposition.

plaintiffs argue that their unjust enrichment claim is not preempted because Bushman and Breon's use of plaintiffs' customer and pricing information is only "incidental" to their claim, which is that Bushman and Breon "orchestrated a scheme to take the off-spec VME business and customers" developed by plaintiffs through misrepresentation, deceit, "and concealment practiced against Plaintiffs, and their [customers], and MCA (at least initially), and violations of [Mitsui's code of conduct]."[23] (Opp'n B&B SJ Mot. at 3018-19.)

The Court addresses the parties' OUTSA preemption arguments in detail later in this opinion, but to the extent that plaintiffs' unjust enrichment claim is based upon plaintiffs' alleged confidential and proprietary information, the claim is preempted and defendants' are entitled to summary judgment on that basis. (*See* section G.)

To the extent that plaintiffs' unjust enrichment claim is not preempted by OUTSA, Bushman and Breon are nevertheless entitled to judgment for the same reasons that MCA is entitled to judgment on this claim. It is undisputed that plaintiffs developed a successful off-spec VME business for their own benefit, not for the benefit of Bushman and Breon, and reaped the benefits of their efforts for fifteen (15) years. *See LightStyles* and *Allen, supra*. There is no evidence that plaintiffs developed the off-spec VME business for Bushman and Breon as a result of defendants' fraud, misrepresentation, or bad faith, who then wrongfully failed to compensate plaintiffs for their efforts. *See*

---

[23] In reply, Bushman and Breon object to what they characterize as plaintiffs' avoidance of their preemption argument by attempting to amend the complaint through their opposition brief with respect to the factual basis for their unjust enrichment claim. (B&B SJ Reply at 3385.) The Court notes that paragraph 42 in plaintiffs' fifth claim incorporates all of the preceding allegations in the complaint, which include allegations of a scheme to intentionally and maliciously deprive plaintiffs' of their business and profits. (*See e.g.* FAC ¶¶ 18, 19.) The Court, however, need not rule on the merits of defendants' argument that plaintiffs' attempted amendment is impermissible because defendants are nevertheless entitled to summary judgment on plaintiffs' unjust enrichment claim.

*Schlaegel v. Howell*, 42 N.E.3d 771, 782 (Ohio Ct. App. 2015) (benefit conferred by plaintiff must be in response to fraud, misrepresentation, or bad faith of defendant) (quoting *Superior Piping Contrs., Inc. v. Reilly Industries, Inc.,* No. 90751, 2008 WL 4356107, at *5 (Ohio Ct. App. Sept. 25, 2008)).

Bushman and Breon are entitled to summary judgment on plaintiffs' claim for unjust enrichment.

## F. Claim six—Civil conspiracy

> "In Ohio, a civil conspiracy consists of the following: (1) a malicious combination; (2) two or more persons; (3) injury to person or property; and (4) *existence of an unlawful act independent from the actual conspiracy." Universal Coach, Inc. v. New York City Transit Auth., Inc.,* 90 Ohio App.3d 284, 629 N.E.2d 28, 33 (1993) (citations omitted). A plaintiff need not demonstrate an explicit agreement but only an understanding or common design between the parties to commit an improper act. *Gosden v. Louis,* 116 Ohio App.3d 195, 687 N.E.2d 481, 496 (1996) (citations omitted). "The ultimate fact of conspiracy is solely a question for the jury, unless the court can say, as a matter of law, that there is no proof tending to establish a conspiracy." *LeFort v. Century 21– Maitland Realty & Co.,* 32 Ohio St.3d 121, 512 N.E.2d 640, 645 (1987) (citations omitted).

*Lee v. Countrywide Home Loans, Inc.*, 692 F.3d 442, 446 (6th Cir. 2012) (emphasis added).

An essential element of a civil conspiracy claim is the existence of an unlawful act independent of the conspiracy. Plaintiffs have failed to identify a viable unlawful act upon which to base their conspiracy claim. Having failed to establish this essential element, MCA, Bushman and Breon, are entitled to summary judgment on plaintiffs' civil conspiracy claim. *Celotex,* 477 U.S. at 322-23.

**G. Ohio Uniform Trade Secrets Act**

Defendants argue on summary judgment that, to the extent plaintiffs' tort and quasi-contract claims rely on the alleged wrongful use of plaintiffs' confidential and proprietary customer and pricing information, those claims are preempted by OUTSA. Ohio Rev. Code. § 1333.61, *et seq*. OUTSA preempts causes of action for misappropriation of trade secrets, and causes of action that are based in some way on the misappropriation of trade secrets. *Stolle Mach. Co., LLC v. RAM Precision Indus.*, 605 F. App'x 473, 484 (6th Cir. 2015). This is true whether or not the misappropriated information rises to the level of a trade secret. *Miami Valley Mobile Health Servs., Inc. v. ExamOne Worldwide, Inc.*, 852 F. Supp. 2d 925, 940 (S.D. Ohio 2012). OUTSA does not preempt claims for contractual remedies (whether or not based on misappropriation of a trade secret), civil remedies that are not based on misappropriation of a trade secret, and criminal remedies. *Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg., Inc.*, 649 F. Supp. 2d 702, 720 (N.D. Ohio 2009) (citing Ohio Rev. Code § 1333.67).

In opposing defendants' preemption arguments, plaintiffs do not dispute that, to the extent their tort and unjust enrichment claims are based on plaintiffs' alleged confidential and proprietary information, those claims are preempted by OUTSA. Plaintiffs argue, however, that plaintiffs' customer and pricing information are "incidental" to the claim. (Opp'n MCA SJ Mot. at 2717; Opp'n B&B SJ Mot. at 3018.) According to plaintiffs, the evidence developed in discovery shows that the facts underlying plaintiffs' common law claims are that Bushman and Breon orchestrated a scheme to take over the off-spec VME business and customers developed by plaintiffs,

using misrepresentation, deceit, and concealment against plaintiffs and their customers. (Opp'n MCA SJ Mot. at 2717-18; Opp'n B&B SJ Mot. at 3018-19.)

When common law claims are supported both by factual allegations that touch upon misappropriation of trade secrets as well as other independent allegations, courts have adopted a "partial preemption" approach to such a hybrid claim. *See Source Assocs.,* 2016 WL 828785, at *7 (citing *Office Depot*, 821 F. Supp. 2d 912, 920-21 (N.D. Ohio 2011)). Applying this approach, to the extent the plaintiffs' tortious interference and unjust enrichment claims are based upon the allegation that defendants used plaintiffs' customer and pricing information without permission or authorization,[24] those claims are preempted by OUTSA, and defendants' are entitled to summary judgment on those claims on this additional basis. To the extent that plaintiffs' tortious interference and unjust enrichment claims are based upon a factual basis independent from any misappropriation allegation, those claims are not preempted by OUTSA, but defendants are nevertheless entitled to summary judgment on those claims for the reasons previously set forth.

---

[24] Plaintiffs do not outright make a claim in the first amended complaint for misappropriation of trade secrets.

## IV. CONCLUSION

For all of the foregoing reasons, the motions for summary judgment of defendants MCA, Bushman, and Breon are granted. All of plaintiffs' remaining claims are hereby dismissed. This case is closed.

**IT IS SO ORDERED**.

Dated: June 16, 2017

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**